IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Tammy Fowler as Personal Representative for the Estate of Ralph Owens, | ) ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 8:21-0430-HMH **OPINION & ORDER** |
| vs. | ) ) | |
| SSC Seneca Operating Company, LLC, d/b/a Seneca Health and Rehabilitation Center, SavaSeniorCare, LLC; SSC Equity Holdings, LLC; SavaSeniorCare Administrative Services, LLC; and SavaSeniorCare Consulting, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Pending before the court are three motions. Defendant SSC Seneca Operating Company, LLC d/b/a Seneca Health and Rehabilitation Center (the "Facility") filed a motion to dismiss and to compel arbitration pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure and 9 U.S.C. §§ 2, 4 of the Federal Arbitration Act ("FAA"). Defendants SavaSeniorCare Consulting, LLC ("Sava Consulting") and SavaSeniorCare Administrative Services, LLC ("Sava Administrative") both filed motions to stay pursuant to 9 U.S.C. § 3, of the FAA. For the reasons set forth below, the court denies the motions.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from Ralph Owens's ("Owens") care while residing at the Facility in Seneca, South Carolina. (Compl. ¶¶ 22-53, ECF No. 1-1.) Owens was first admitted to the Facility around January 31, 2019. (Id. at ¶ 22, ECF No. 1-1.) As part of the admissions

1

process, Owens's wife, Judy Owens ("Wife"), signed a Resident Admission Agreement ("RAA") on behalf of Owens. (Mem. Supp. Mot. Compel 2, ECF No. 16-1); (Mot. Compel Ex. 2 (RAA), ECF No. 16-3.) Wife also signed a separate Dispute Resolution Program Agreement ("Arbitration Agreement" or "AA"). (Mem. Supp. Mot. Compel 2, ECF No. 16-1); (Mot. Compel Ex. 1 (AA), ECF No. 16-2.) Wife did not have power of attorney for Owens at the time she signed the agreements. (Mem. Supp. Mot. Compel 14, ECF No. 16-1); (Resp. 2, 10, 12, ECF No. 22.)

Plaintiff Tammy Fowler ("Fowler") contends that on or about February 1, 2019, Owens was injured in a fall caused by the Facility's neglect and negligence. (Compl. ¶¶ 23-27, 29, ECF No. 1-1.) Fowler asserts that Owens suffered head injuries including a subarachnoid hemorrhage as well as a fractured femur. (Id. ¶ 29, ECF No. 1-1.) Owens died on February 19, 2019, and Fowler alleges his death was caused by the Facility. (Id. ¶¶ 23, 27, 30-31, ECF No. 1-1.)

On November 16, 2020, Fowler brought a survival action and, acting as the personal representative of Owen's estate pursuant to S.C. Code Ann. § 62-3-203, a wrongful death action against the Facility, alleging various tort and contract claims in the Court of Common Pleas of Oconee County, South Carolina. (Compl., generally, ECF No. 1-1.) The Facility removed the case to this court based on diversity jurisdiction on February 10, 2021. (Not. Removal, ECF No. 1.) The Facility filed a motion to dismiss and compel arbitration on March 5, 2020. (Mot. Compel, ECF No. 16.) Sava Consulting filed a motion to stay on March 15, 2020. (Sava Consulting Mot. Stay, ECF No. 18.) On the same day, Sava Administrative also filed a motion to stay. (Sava Admin. Mot. Stay, ECF No. 19.) Fowler filed a response to the motion to dismiss

and compel and the motions to stay on April 1, 2020.  (Resp., ECF No. 22.)  On April 8, 2021 the Facility filed a reply.  (Reply, ECF No. 24.)  This matter is now ripe for review.

## II. DISCUSSION OF LAW

### A. Motion to Compel Arbitration

The Facility submits that this case is subject to arbitration pursuant to the Arbitration Agreement.  (Mem. Supp. Mot. Compel, generally, ECF No. 16-1.)  The FAA governs written contracts to arbitrate that "evidenc[e] a transaction involving commerce[.]"  9 U.S.C. § 2.  Under the FAA, arbitration contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Id. § 2.  There is "a liberal federal policy favoring arbitration agreements."  Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (internal quotation marks and citation omitted).  However, "[e]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."  Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997) (citations omitted).  As such, "district courts are [not] to grant blindly all motions to compel arbitration."  Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, No. 20-1187, 2021 WL 1287563, at *3 (4th Cir. Apr. 7, 2021).  Under Section 4 of the FAA it is "the court's obligation to determine whether a contract was formed."  Id.; see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296, (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide.") (citations omitted).

The party "who seeks to compel arbitration under the [FAA] bears the burden of establishing the existence of a binding contract to arbitrate the dispute."  Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 867 F.3d 449, 456 (4th Cir. 2017).  To compel arbitration under the FAA, the moving party must show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal . . . to arbitrate the dispute.

Adkins, 303 F.3d at 501 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991). Upon satisfaction of these elements, district courts retain no discretion and must "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citations omitted). In the instant case, the first, third, and fourth elements are satisfied: (1) there is a dispute between the parties regarding Owens's stay at the Facility, (3) the transaction involves interstate commerce,[1] and (4) Fowler has failed to arbitrate this dispute prior to bringing a lawsuit. Fowler contests the second element, and denies the existence of a binding contract to arbitrate this dispute. (Resp., generally, ECF No. 22.) Thus, this matter turns on whether the Arbitration Agreement is a binding contract between the Facility and Owens.

### B. Existence of a Binding Contract to Arbitrate Disputes

The Facility asserts that the Arbitration Agreement is a valid and enforceable agreement and thereby requires arbitration. (Mem. Supp. Mot. Compel, generally, ECF No. 16-1.) Specifically, the Facility argues that Wife signed the Arbitration Agreement with proper authority. (Id., ECF No. 16-1.) In the alterative, the Facility asserts that if Wife lacked authority

---

[1] The Arbitration Agreement provides that it is governed by the FAA and that the Facility's "business activity substantially affects, relates and involves . . . interstate commerce." (Mot. Compel Ex. 1 (AA 7), ECF No. 16-2.) "[M]any-if not all-federal and state courts have held that nursing home residency contracts similar to the one at issue here implicate interstate commerce and the FAA." Dean v. Heritage Healthcare of Ridgeway, LLC, 759 S.E.2d 727, 732 (S.C. 2014). The parties agree that the Arbitration Agreement is governed by the FAA. (Mem. Supp. Mot. Compel 5-8, ECF No. 16-1); (Resp. 1-6, ECF No. 22.)

to sign the Arbitration Agreement, that Fowler should be equitably estopped from denying its enforceability.  (Id., ECF No. 16-1.)  In response, Fowler argues that the Arbitration Agreement is unenforceable because Wife lacked authority to sign the Arbitration Agreement.  (Resp., generally, ECF No. 22.)  Fowler also argues that equitable estoppel should not apply.  (Id., ECF No. 22.)

  Because arbitration is a matter of contract law, it is permitted only when the parties "actually contract to arbitrate disputes between them."  Rowland, 2021 WL 1287563, at *3.  In deciding whether an arbitration agreement exists, the court employs the summary judgment standard.  Id. (citations omitted).  "In applying that standard, the burden is on the defendant to 'establish[ ] the existence of a binding contract to arbitrate the dispute.'"  Id. (quoting Minnieland Priv. Day Sch., Inc., 867 F.3d at 456) (alteration in original).  Section 4 of the FAA requires the court to conduct a trial on the motion to compel arbitration if there are "'sufficient facts' support[ing] a party's denial of an agreement to arbitrate."  Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019) (citations omitted).  However, "a trial occurs only if there are 'genuine issues of material fact.'"  Rowland, 2021 WL 1287563, at *3 (quoting Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc., 807 F.3d 553, 564 (4th Cir. 2015)).  If there are no genuine issues of material fact, it is up to the court to determine, as a matter of law, whether an agreement to arbitrate was formed.[2]  See Rowland, 2021 WL 1287563, at *3.

  "Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles."  Id. (citing Chorley Enters., 807 F.3d at 563.  Thus, the court must examine South

---

[2] The parties dispute the standard governing the establishment of a binding agreement to arbitrate, however, the court is utilizing the applicable standard.

5

Carolina law to determine whether the Arbitration Agreement is a valid contract to which the Facility and Owens are bound. See id.; see also Wilson v. Willis, 827 S.E.2d 167, 173-74 (S.C. 2019).

### 1. South Carolina Contract Law

"Although the existence of a contract is ordinarily a question of fact for the jury, where the undisputed facts do not establish a contract, the question becomes one of law." Stevens & Wilkinson of S.C., Inc. v. City of Columbia, 762 S.E.2d 696, 701 (S.C. 2014) (citation omitted). "Under South Carolina law, a contract is formed between two parties when there is, inter alia, "'a mutual manifestation of assent to [its] terms.'" Hub Int'l, 944 F.3d at 236 (quoting Edens v. Laurel Hill, Inc., 247 S.E.2d 434, 436 (S.C. 1978); see also Stevens & Wilkinson of S.C., 762 S.E.2d at 701 ("A valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.") (emphasis in original) (citation omitted). "The necessary elements of a contract are an offer, acceptance, and valuable consideration." Sauner v. Pub. Serv. Auth. of S.C., 581 S.E.2d 161, 166 (S.C. 2003).

It is undisputed that Wife signed the Arbitration Agreement on behalf of Owens. (Mot. Compel Ex. 1 (AA 10), ECF No. 16-2.) To enforce the Arbitration Agreement against Owens as a nonsignatory, there must be a basis for doing so under South Carolina law. See Wilson, 827 S.E.2d at 173-74; see also id. at 173 ("[A] presumption *against* arbitration arises where the party resisting arbitration is a nonsignatory to the written agreement to arbitrate.") (emphasis in original). "South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law." Id. at 174 (citations

6

omitted).  As noted, the Facility argues Owens is bound by agency, or, in the alternative, by equitable estoppel.

## 2. Common Law Agency

The Facility first argues that Fowler is bound by the Arbitration Agreement because a common law agency relationship existed between Owens and Wife when Wife signed the Arbitration Agreement.  (Mem. Supp. Mot. Compel 8-16, ECF No. 16-1.)  In response, Fowler argues that Wife lacked the authority to sign the Arbitration Agreement on behalf of Owens and the Facility has failed to establish an agency relationship between Owens and Wife.  (Resp. 6-15, ECF No. 22.)

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control."  Hodge v. UniHealth Post-Acute Care of Bamberg, LLC, 813 S.E.2d 292, 303 (S.C. Ct. App. 2018) (internal quotation marks and citation omitted).  "An agent contracting with the authority of his principal binds him to the same extent as if the principal personally made the contract."  S.C. Ins. Co. v. James C. Greene & Co., 348 S.E.2d 617, 624 (S.C. Ct. App. 1986).

> A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts.  The existence of an agency relationship is . . . determined by the relation, the situation, the conduct, and the declarations of the party sought to be charged as principal.  It is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority. [ ] An agency may not be established solely by the declarations and conduct of an alleged agent.  However, such declarations and conduct are admissible as circumstances in connection with other evidence tending to establish the agency.

Hodge, 813 S.E.2d at 304 (internal quotation marks and citations omitted).  Express appointment and acceptance is not required to create an agency relationship.  Id. at 307 (quoting Bankers Tr. of S.C. v. Bruce, 323 S.E.2d 523, 532 (S.C. Ct. App. 1984)).  Agency may be "implied or inferred from the words and conduct of the parties and the circumstances of the particular case." Id. (quoting Nationwide Mut. Ins. Co. v. Prioleau, 597 S.E.2d 165, 168 (S.C. Ct. App. 2004)).

"An agency relationship may be established by evidence of actual or apparent authority." Charleston, S.C. Registry for Golf & Tourism, Inc. v. Young Clement Rivers & Tisdale, LLP, 598 S.E.2d 717, 721 (S.C. Ct. App. 2004) (citation omitted).  "While actual authority is expressly conferred upon the agent by the principal, apparent authority is when the principal knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority." Richardson v. P.V., Inc., 682 S.E.2d 263, 265 (S.C. 2009) (citation omitted).

The Facility argues that Wife possessed apparent authority.  (See Mem. Supp. Mot. Compel, generally, ECF No. 16-1.)  "To establish apparent authority, the proponent must show (1) the purported principal consciously or impliedly represented another to be his agent; (2) the proponent relied on the representation; and (3) there was a change of position to the [proponent's] detriment." Thompson v. Pruitt Corp., 784 S.E.2d 679, 685 (S.C. Ct. App. 2016) (internal quotations and citations omitted).

> Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the *principal* which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him.

Id. (emphasis added) (citations omitted).  "Either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief." Id. at 686  (internal quotation marks and citations omitted); see

also Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292, 297 (S.C. 1996) ("The doctrine of apparent authority focuses on the principal's manifestation to a third party that the agent has certain authority.").

"The first element of apparent agency can be established by either: (1) affirmative conduct or (2) conscious and voluntary inaction."[3] Froneberger v. Smith, 748 S.E.2d 625, 630 (S.C. Ct. App. 2013). The Facility argues that by signing the Arbitration Agreement, Wife held herself out as an agent of Owens. (Mem. Supp. Mot. Compel 8-9, 11, ECF No. 16-1.) In support, the Facility points to language on the signature page of the Arbitration Agreement where Wife attested that she "ha[d] the authority to sign the agreement on [Owens's] behalf."[4] (Mot. Compel Ex. 1 (AA 10), ECF No. 16-2.) Although Wife's conduct as the purported agent is relevant, the focus is on the relationship between the purported principal (Owens) and the third party (the Facility). See Froneberger, 748 S.E.2d at 630-31. "[A]n agency may not be established solely by

---

[3] "Under the first of these two scenarios, the principal makes direct representations to a third party that another has authority to act on his behalf." Froneberger, 748 S.E.2d at 630 (citations omitted). "Under the second, the principal implies authority by passively permitting another to appear to third parties to have authority to act on his behalf." Id. (citations omitted).

[4] The Arbitration Agreement contains two signature pages. The first signature page, which was left blank, reads: "If resident is competent, complete this section[.]" (Mot. Compel Ex. 1 (AA 9), ECF No. 16-2.) The second signature page, which was signed by Wife and a Facility representative, reads:

> If the resident is adjudged incompetent, complete this section:
>
> I am the spouse, responsible party, legal guardian or power or attorney of the resident and have the authority to sign the agreement on his/her behalf. In signing the Agreement, the Legal Representative or Family Member binds both the Resident and themselves individually.

(Id. Ex. 1 (AA 10), ECF No. 16-2.) Wife signed the signature line labeled "Signature of Legal Representative or Family Member." (Id. Ex. 1 (AA 10), ECF No. 16-2.)

the declarations and conduct of an alleged agent." Hodge, 813 S.E.2d at 304 (internal quotation marks and citation omitted); see also id. at 307. Thus, to establish the first element of apparent authority, the Facility must present sufficient evidence that Owens, as the purported principal, represented Wife to be his agent.

Turning to Owens, the Facility claims "Owens held [Wife] out as his representative in allowing her to sign various admissions documents including the arbitration agreement." (Mem. Supp. Mot. Compel 11, ECF No. 16-1.) The Facility argues that by relying on Wife to make decisions concerning his healthcare and to communicate with the Facility, Owens "cloaked" Wife with authority to sign the Arbitration Agreement. (Id. at 12, ECF No. 16-1); (Mot. Compel Ex. 3 (Other Written Consents 2), ECF No. 16-4.) However, the record[5] is devoid of evidence to support the Facility's claims. The Facility's conclusory allegations, without supportive facts, are insufficient to establish apparent authority. See Froneberger, 748 S.E.2d at 630-31. In fact, according to the signature page of the Arbitration Agreement, Owens was "adjudged incompetent" at the time he was admitted to the Facility and therefore his incapacity alone would have "prevented h[im] from 'consciously or impliedly' representing another to be h[is] agent." Thompson, 784 S.E.2d at 686. (Mot. Compel Ex. 1 (AA 10), ECF No. 16-2.) Additionally, any authority Wife may have had to make health care decisions "does not encompass executing an agreement to resolve legal claims by arbitration." Thompson, 784 S.E.2d at 686 (citations omitted); see also Coleman v. Mariner Health Care, Inc., 755 S.E.2d 450, 453-54 (S.C. 2014).

---

[5] The only evidence before the court is the RAA, the Arbitration Agreement, and four "Other Written Consents." (See Mot. Compel Ex. 1 (AA), ECF No. 16-2); Id. Ex. 2 (RAA), ECF No. 16-3); Id. Ex. 3 (Other Written Consents), ECF No. 16-4.)

The Facility has failed to raise any genuine issue of material fact to support a finding of apparent authority. Agency cannot be established based on Wife's representation alone by signing the Arbitration Agreement. Based on the foregoing, the court finds that the Facility has failed to submit sufficient evidence that Wife had the authority to sign the Arbitration Agreement on Owens's behalf.

### 3. Merger

The Facility next argues that even if Wife lacked authority to sign the Arbitration Agreement, the RAA and Arbitration Agreement should be construed together, or merged, and Fowler should therefore be equitably estopped to deny the Arbitration Agreement's enforceability. (Mem. Supp. Mot. Compel 19-26, ECF No. 16-1.) The Facility's equitable estoppel argument is premised on its contention that the RAA and the Arbitration Agreement merged. See Coleman, 755 S.E.2d at 455. Therefore, a finding of merger is required for the court to reach the Facility's equitable estoppel argument. Id.; Hodge, 813 S.E.2d at 302.

> Under South Carolina law,
>
> The general rule is that, in the absence of anything indicating a contrary intention, where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, the courts will consider and construe the documents together. The theory is that the instruments are effectively one instrument or contract.

Coleman, 755 S.E.2d at 455 (quoting Klutts Resort Realty, Inc. v. Down'Round Dev. Corp., 232 S.E.2d 20, 24 (S.C. 1977)). In Coleman, an admission agreement to a health care facility and an arbitration agreement "were executed at the same time, by the same parties, for the same purposes, and in the course of the same transaction." 755 S.E.2d at 455. However, the South Carolina Supreme Court found "[b]y their own terms, the contracts between the[ ] parties

11

indicated an intent that the common law doctrine of merger not apply." Id. Evidence of the parties' intent to keep the two agreements separate included language in the admission agreement that recognized the "separatedness" of the two documents. The court also found that the ability to disclaim the arbitration agreement within thirty days, but not the admission agreement "evidenc[ed] an intention that each contract remain separate." Id. "Finally, the court stressed that even if the language of the admission agreement created 'an ambiguity as to merger, the law is clear that any ambiguity in such a clause is *construed against the drafter*, in this case, [the facility].'" Thompson, 784 S.E.2d at 684-85 (quoting Coleman, 755 at 455) (emphasis and alterations in original).

Following Coleman, the South Carolina Court of Appeals considered additional evidence of intent to keep health care facility admission agreements and arbitration agreements separate. In Thompson, the court considered the fact that signing the arbitration agreement was not a precondition to admission to the facility as evidence of intent to keep the arbitration agreement and admission agreement separate. 784 S.E.2d at 685. In Hodge, the court considered the fact that the admission agreement and arbitration agreement were "separately paginated and each had its own signature page" as evidence of intent to keep the agreements separate. 813 S.E.2d at 302.

Here, the RAA and Arbitration Agreement were executed at the same time, by the same parties, for the same purposes, and in the course of the same transaction. (Mem. Supp. Mot. Compel 21-22, ECF No. 16-1); (Mot. Compel Ex. 1 (AA 10), ECF No. 16-2); (Id. Ex. 2 (RAA 14), ECF No. 16-3.) Unless there is a contrary intention, the documents merged. Coleman, 755 S.E.2d at 455.

The Facility argues that the agreements merged because, unlike the agreements in Coleman and Hodge, neither the RAA nor the Arbitration Agreement recognized the "separatedness" of the agreements by referencing the documents separately. (Mem. Supp. Mot. Compel 21, ECF No. 16-1.) See Coleman, 755 S.E.2d at 455 (finding that the admission agreement "[o]n its face . . . recognize[d] the 'separatedness' of the [arbitration agreement] and the admission agreement" because it referenced "[t]his Agreement . . . and the Arbitration Agreement."). However, there is no requirement that contrary intention be indicated in this manner. See Coleman, 755 S.E.2d at 455; see also Thompson, 784 S.E.2d at 684-85. Additionally, the terms of the agreements do not incorporate each other. The RAA contains an "entirety" clause stating "Except as stated in this Agreement and the Exhibits hereto, no other agreement, statement, or promise shall be valid or binding." (Mot. Compel Ex. 2 (RAA 13), ECF No. 16-3.) The RAA defines "Agreement" to be only the RAA itself and the Arbitration Agreement is not listed as an "Exhibit" to the RAA. (Id. Ex. 2 (RAA 4-6, 13), ECF No. 16-3.) Therefore, the "entirety" clause in the RAA incorporating all "Exhibits" must be construed against the Facility. See Thompson, 784 S.E.2d at 685 (citing Coleman, 755 S.E.2d at 455-56 (holding any ambiguity in the patient's admission agreement as to its merger with the arbitration agreement was to be construed against the health care facility)).

Much of the evidence of contrary intent found in Coleman, Thompson, and Hodge exists in the present case. The Arbitration Agreement provided that it could be disclaimed within thirty days, yet the RAA did not include such a provision. (Mot. Compel Ex. 1 (AA 3), ECF No. 16-2); (Id. Ex. 2 (RAA), ECF No. 16-3.) Further, the Arbitration Agreement was a voluntary agreement and signing it was not a precondition to admission to the Facility. (Id. Ex. 1 (AA 3), ECF No. 16-

2.)  Additionally, the RAA and Arbitration Agreement were separately labeled, numbered, and each document contained its own signature page.  (Id. Ex. 1 (AA), ECF No. 16-2); (Id. Ex. 2 (RAA), ECF No. 16-3.)  For all of these reasons, the court finds that the RAA and the Arbitration Agreement did not merge.

Because the documents did not merge, the Facility's equitable estoppel argument fails.  See Coleman, 755 S.E.2d at 455; see also Hodge, 813 S.E.2d at 301-02.

### III. CONCLUSION

Based on the foregoing, the court finds the Facility has failed to establish the existence of a binding contract to arbitrate the dispute between itself and Owens.  Therefore, the court denies the Facility's motion to dismiss and compel arbitration.  Further, the court denies Sava Consulting and Sava Administrative's motions to stay.

It is therefore

**ORDERED** that the Facility's motion to dismiss and compel arbitration, docket number 16, is denied

It is further

**ORDERED** that Sava Consulting's motion to stay, docket number 18, is denied.

It is further

**ORDERED** that Sava Administrative's motion to stay, docket number 19, is denied.

**IT IS SO ORDERED.**

                              s/Henry M. Herlong, Jr.
                              Senior United States District Judge

Greenville, South Carolina
April 16, 2021