IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Tammy Fowler as Personal Representative for the Estate of Ralph Owens, <br><br> Plaintiff, <br><br> vs. <br><br> SSC Seneca Operating Company, LLC, d/b/a Seneca Health and Rehabilitation Center; SavaSeniorCare, LLC; SSC Equity Holdings, LLC; SavaSeniorCare Administrative Services, LLC; and SavaSeniorCare Consulting, LLC, <br><br> Defendants. | C.A. No. 8:21-00430-HMH <br><br> **OPINION & ORDER** |

Before the court are Defendants SSC Equity Holdings, LLC's ("Equity Holdings") and SavaSeniorCare, LLC's ("SSC") (collectively "Defendants") motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the reasons below, the court grants Defendants' motions.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the allegedly deficient care that Ralph Owens ("Owens") received while residing at a skilled nursing facility operated by SSC Seneca Operating Company, LLC, d/b/a Seneca Health and Rehabilitation Center ("the Facility"). Plaintiff Tammy Fowler ("Fowler") alleges that Owens suffered subarachnoid hemorrhaging and a fractured left hip after falling at the Facility on February 1, 2019. (Compl. ¶¶ 27, 29, ECF No. 1-1.) Owens was

1

hospitalized and later died from his injuries on February 19, 2019.  (Id. ¶¶ 29-30, ECF No. 1-1.) Fowler claims that his death is attributable to the Facility's negligence.  (Id. ¶ 31, ECF No. 1-1.)

On November 16, 2020, Fowler filed suit in the Oconee County Court of Common Pleas, asserting claims for negligence, corporate negligence, negligence per se, breach of contract, elder abuse/neglect of a vulnerable adult, wrongful death and survival, joint venture, breach of fiduciary duty, unjust enrichment, alter ego/piercing the corporate veil, and amalgamation of interests.  (Compl., generally, ECF No. 1-1.)  Relevant for purposes of the present motions, Fowler alleges that SSC and Equity Holdings – along with the Facility, SavaSeniorCare Administrative Services, LLC ("Sava Administrative") and SavaSeniorCare Consulting, LLC ("Sava Consulting") – "acted as one jointed integrated enterprise blurring their corporate identity."  (Id. ¶ 8, ECF No. 1-1.)  According to Fowler, the five Defendants are "organized in a pyramidal corporate structure," with SSC "sit[ting] atop that structure."  (Pl.'s Resp. Opp'n 4, ECF No. 65.)  Plaintiff claims that SSC, a Delaware LLC, owns about 185 skilled nursing facilities in nineteen states, including the Facility, which it operates through its subsidiaries. (Id. 4, ECF No. 65); (Compl. ¶ 6, ECF No. 1-1.)  Fowler specifically alleges that SSC and Equity Holdings, also a Delaware LLC, "were involved in the ownership, operating and/or management" of the Facility and "controll[ed]" its "revenue and budget."  (Compl. ¶¶ 7, 12, 13, ECF No. 1-1.)  Moreover, she alleges that SSC and its subsidiaries share common owners, directors, and officers; that SSC finances its subsidiaries' operations; that SSC caused the incorporation of its subsidiaries; that its subsidiaries are grossly undercapitalized; that SSC pays the salaries and other expenses of its subsidiaries; that its subsidiaries receive all their business

from SSC; and that its subsidiaries' executives take their orders from SSC. (Id. ¶ 10, ECF No. 1-1.)

On February 10, 2021, Defendants removed the case to this court based on diversity jurisdiction. (Notice Removal, ECF No. 1.) After all five Defendants answered Fowler's complaint, the Facility moved to dismiss and compel arbitration on March 5, 2021. (Mot. Compel, ECF No. 16.) Sava Consulting and Sava Administrative also filed motions on March 15, 2021, to stay the case pending resolution of the motion to compel. (Sava Consulting Mot. Stay, ECF No. 18); (Sava Admin. Mot. Stay, ECF No. 19.) The court denied all three motions on April 16, 2021. (Op. & Order, ECF No. 25.) The Fourth Circuit subsequently affirmed the court's order on July 26, 2022. Fowler v. SSC Seneca Operating Co., No. 21-1593, 2022 WL 2951779 (4th Cir. July 26, 2022) (unpublished).

On November 21, 2022, SSC and Equity Holdings filed the instant motions to dismiss for lack of personal jurisdiction. (SSC Mot. Dismiss, ECF No. 63); (Equity Holdings Mot. Dismiss, ECF No. 62.) Fowler responded in opposition on December 5, 2022. (Pl.'s Resp. Opp'n, ECF No. 65.) Defendants did not reply, and the time to do so has now passed. This matter is ripe for review.

## II. LEGAL STANDARDS

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. "Where, as here, the . . . court decides jurisdiction on the motion papers alone, the plaintiff need only make a 'prima facie showing of a sufficient jurisdictional basis' to prevail." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir.

2016) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In deciding whether the plaintiff has made such showing, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676. The court will not, however, "credit conclusory allegations or draw farfetched inferences." Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 405 (D.S.C. 2012) (citation omitted).

### B. Personal Jurisdiction Generally

Personal jurisdiction refers to "the court's power to exercise control over the parties." Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). Where, as in this case, the forum state's long-arm statute extends to the limits of federal due process, the two-part inquiry collapses into one: whether the court's exercise of personal jurisdiction is consistent with the Fourteenth Amendment's Due Process Clause. Foster v. Arletty 3 S.A.R.L., 278 F.3d 409, 414 (4th Cir. 2002). That constitutional provision prevents a federal court from exercising jurisdiction unless the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable' . . . and 'does not offend traditional notions of fair play and substantial justice.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945)).

The Supreme Court has recognized two types of personal jurisdiction: general and specific. Id. Only specific jurisdiction is at issue in this case. (Resp. Opp'n Defs.' Mot. Dismiss 9, ECF No. 65.) To determine whether specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003) (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002)).

### III. DISCUSSION

In moving to dismiss for lack of personal jurisdiction, Equity Holdings and SSC advance two main arguments. First, Equity Holdings and SSC argue that Fowler improperly "lump[ed]" them together with the other Defendants in her complaint and cannot rely on a "joint integrated enterprise" theory to establish personal jurisdiction. (Equity Holding's Mem. Supp. Mot. Dismiss 16-18, ECF No. 62-1); (SSC's Mem. Supp. Mot. Dismiss 16-18, ECF No. 63-1.) See Wright v. Waste Pro USA Inc., No. 2:17-cv-02654, 2019 WL 3344040, at *11 (D.S.C. July 25, 2019) (unpublished) ("[T]he weight of the authority . . . has determined that the [joint integrated enterprise] theory applies only to liability and cannot be relied upon to create personal jurisdiction."). Second, Equity Holdings and SSC, relying on the affidavits of Wynn Sims, argue that they have not purposefully availed themselves of the privilege of conducting business in South Carolina because they are mere holding companies with no employees; are not registered to do business in South Carolina; do not maintain offices or own property in South

5

Carolina; have never operated, directed, or controlled the Facility's daily operations; and have never solicited, initiated, or engaged in business activities in South Carolina. (Equity Holding's Mem. Supp. Mot. Dismiss 18-19, ECF No. 62-1.); (SSC's Mem. Supp. Mot. Dismiss 18-19, ECF No. 63-1.)

In response, Fowler counters that Equity Holdings and SSC have waived the right to challenge personal jurisdiction by participating in the litigation for nearly two years. (Resp. Opp'n Defs.' Mot. Dismiss 6-8, ECF No. 65.) Fowler also contends that Equity Holdings and SSC have sufficient contacts with South Carolina in part because (1) both Defendants are listed as partial owners of the Facility on Medicare.gov and (2) SSC is a signatory to an agreement that provides a line of credit to the Facility. (Id. 13-14, ECF No. 65.)

The court first addresses Fowler's waiver argument and then whether Equity Holdings and SSC are subject to personal jurisdiction in South Carolina.

### A. Waiver

Objections to personal jurisdiction – unlike subject-matter jurisdiction – are waivable. Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982) (explaining that personal jurisdiction "restrict[s]" judicial power "as a matter of individual liberty" and "not as a matter of sovereignty" because it flows from the Due Process Clause rather than Article III). Federal Rule of Civil Procedure 12(h) provides that the failure to challenge personal jurisdiction in a pre-answer motion or responsive pleading constitutes a waiver of the defense. "Rule 12(h), however, 'sets only the outer limits of waiver; it does not preclude waiver by implication.'" Hager v. Graham, No. 5:05CV129, 2010 WL 753242, at *1 (N.D. W. Va. Mar. 2, 2010) (unpublished) (quoting Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir.

1990)). A defendant may forfeit its right to challenge personal jurisdiction – even if the defendant has preserved the defense in its answer – by failing to timely pursue the defense and instead actively participating in the litigation. See, e.g., Hager, 2010 WL 753242, at *2-3; Yeldell, 913 F.3d at 539; Blankenship v. Boston Globe Media Partners, LLC, No. 2:19-cv-00589, 2022 WL 329121, at *4 (S.D. W. Va. Feb. 2, 2022) (unpublished); In re Polyester Staple Antitrust Litig., No. 3:03CV1516, 2008 WL 906331, at *18-20 (W.D.N.C. Apr. 1, 2008) (unpublished); In re Asbestos Prods. Liab. Litig. (No. VI), 921 F.3d 98, 107-08 (3d Cir. 2019); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999); Cont'l Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993).

"[T]here is no bright line rule" for "what constitutes waiver by conduct[.]" Blessing v. Chandrasekhar, 988 F.3d 889, 896 (6th Cir. 2021) (quoting Boulger v. Woods, 917 F.3d 471, 477 (6th Cir. 2019)). The inquiry is "more [an] art than a science" and requires the court to "consider all of the relevant circumstances." Id. at 895-96 (internal quotations omitted). Courts usually focus on how long the defendant waited to pursue the defense, Matthews v. Brookstone Stores, Inc., 431 F. Supp. 2d 1219, 1224 (S.D. Ala. 2006), and the extent of the defendant's involvement in the case, including whether the defendant has "enter[ed] an appearance, fil[ed] motions and request[ed] relief, or participat[ed] in hearings or discovery," U.S. to Use of Combustion Sys. Sales, Inc. v. E. Metal Prods. & Fabricators, Inc., 112 F.R.D. 685, 687 (M.D.N.C. 1986). Generally, "[t]he longer the time interval" and "[t]he more active a defendant has been in litigating a case," "the more likely it is that courts will find a waiver." Brookstone Stores, 431 F. Supp. 2d at 1223-24. The overarching inquiry is whether the defendant's conduct has given the "plaintiff a reasonable expectation that [the defendant] will defend the suit on the

7

merits" or "cause[d] the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." Hedeen Int'l, LLC v. Zing Toys, Inc., 811 F.3d 904, 906 (7th Cir. 2016); Blessing, 988 F.3d at 899.

After review, the court finds that Defendants have not forfeited their personal-jurisdiction defense. Both SSC and Equity Holdings timely raised the defense in their answers filed on February 17, 2021, meaning they complied with Rule 12(h)(1). (SSC Answer ¶ 53, ECF No. 15); (Equity Holdings Answer ¶ 54, ECF No. 12.) Although Defendants did not present the defense for the court's consideration until November 21, 2022, this case was stayed for fourteen months pending resolution of the interlocutory appeal of the court's order denying the Facility's motion to dismiss and compel arbitration and Sava Consulting's and Sava Administrative's motions to stay. See Levin v. Alms & Assocs., 634 F.3d 260, 266 (4th Cir. 2011) ("[A]n appeal on the issue of arbitrability automatically divests the district court of jurisdiction over the underlying claims and requires a stay of the action . . . ."). In other words, Defendants had seven months in which the case was not stayed to raise the defense. A seven-month delay is insufficient to support a finding of waiver in this case. See, e.g., Dawson v. Bruce Teleky, Inc., No. 6:18-cv-1908-ORL-37LRH, 2019 WL 13066868, at *3 (M.D. Fla. Nov. 19, 2019) (unpublished) (eight-month delay did not constitute waiver); McCarthy v. Yamaha Motor Mfg. Corp., 994 F. Supp. 2d 1318, 1322-23 (N.D. Ga. 2014) (seven-month delay did not constitute waiver); Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc., No. 03–30622, 2004 WL 1541314, at *3 (5th Cir. July 9, 2004) (unpublished) (same); Salinero v. Johnson & Johnson, Inc., No. 18-CIV-23643-RAR, 2019 WL 2410076, at *4 (S.D. Fla. June 7, 2019) (unpublished) (six-month delay did not constitute waiver).

Defendants' litigation activity likewise does not support a finding of waiver. Since filing their answers, Defendants have (1) engaged in mediation; (2) jointly submitted a Rule 26(f) report and a Rule 26(f)(3) discovery plan; (3) answered Local Rule 26.03 interrogatories; (4) jointly moved to amend the scheduling order and appeared before the court for a hearing on the motion; (5) and filed a consent motion for confidentiality order. This conduct does not rise to the level necessary to waive personal jurisdiction, as defendants have not engaged in extensive discovery or motion practice or sought affirmative relief from the court. See Cont'l Bank, 10 F.3d at 1297 (finding waiver where defendants "participated in lengthy discovery, filed various motions and opposed a number of motions filed by the bank" over a period of two-and-a-half years); Yeldell, 913 F.2d at 539 (finding waiver where defendants "participated in discovery, filed various motions, participated in a five-day trial, and filed post-trial motions, all without raising the issue of personal jurisdiction or requesting a ruling on it"); Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co., No. 99-4042, 2000 WL 147392, at *3 (10th Cir. Feb. 4, 2000) (unpublished) (finding waiver where defendant asserted a cross-claim, engaged in settlement negotiations, entered into a stipulation to dismiss all claims except for its cross-claim, and sought a prejudgment writ of attachment before finally moving to dismiss more than three years after the case began). Instead, the record indicates that SSC and Equity Holdings have largely been passive participants in this action.

In sum, the court finds that SSC and Equity Holdings have not forfeited their defense of lack of personal jurisdiction. The court now considers the merits of the personal jurisdiction issue.

## B. Specific Jurisdiction

Fowler does not argue that SSC and Equity Holdings are subject to general jurisdiction in South Carolina, so the court considers only whether it has specific jurisdiction over Defendants. For the court to exercise specific jurisdiction over SSC and Equity Holdings, Fowler must show that (1) Defendants purposefully availed themselves of the privilege of doing business in South Carolina; (2) her claims arise out of Defendants' forum-related activities; and (3) the exercise of jurisdiction would be reasonable. Carefirst, 334 F.3d at 397.

The purposeful availment element is satisfied if "the defendant deliberately has engaged in significant activities within [the forum]" or "has created continuing obligations between [itself] and residents of the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985) (internal quotations and citations omitted). The Fourth Circuit has enumerated several nonexclusive factors to consider in evaluating this element, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations and formatting omitted).

Fowler relies heavily on the allegations in her complaint in arguing that Defendants have purposefully availed themselves of the privilege of doing business within South Carolina. She alleges, among other things, that:

10

- the five Defendants "acted as one jointed integrated enterprise blurring their corporate identity,"

- Equity Holdings, the Facility, Sava Consulting, and Sava Administrative "are subsidiaries and related entities" of SSC and "are acting in a joint venture to own and operate nursing homes in South Carolina,"

- SSC and Equity Holdings "were involved in the ownership, operating, and/or management of nursing homes for profit including the [F]acility where Ralph Owens resided,"

- SSC and Equity Holdings "were involved in controlling the revenue and the budget which affected the budget, staffing, training, supervision, development and implementation of policies and procedures for the [F]acility,"

- SSC "totally dominated and controlled [the Facility] through loans, leases and contracts,"

- Equity Holdings, the Facility, Sava Consulting, and Sava Administrative "were so organized and controlled, and their business conducted in such a manner that they were merely an agency, instrumentality, adjunct, and/or alter ego of [SSC],"

- the five Defendants "have engaged in substantial business activities in South Carolina, including the management, operation, control and/or ownership of [the Facility] at various times, and derived substantial revenue from services provided in South Carolina," and

- the five Defendants "are and have been operating as an amalgamation of interest creating a blurred corporate identity by sharing an internet website, officers, shareholders, locations, policies and procedures, ownership, headquarters, [and] in-house counsel, and by commingling funds and revenue."

(Compl. ¶¶ 8, 9, 12, 13, 14, 15, 18, ECF No. 1-1.)

These allegations, however, are precisely the type of conclusory allegations that the court is not bound to accept. Sonoco Prods., 877 F. Supp. 2d at 405. Fowler merely recites the various factors relevant to the joint venture, alter ego, veil piercing, and single-business enterprise analyses without offering any supporting facts. Fowler does not explain, for example, how SSC or Equity Holdings "were involved in the ownership, operating, and/or management"

11

of the Facility or how they "affected the budget, staffing, training, supervision, development and implementation of policies and procedures for the [F]acility."  (Compl. ¶¶ 12-13, ECF No. 1-1.)  Moreover, Fowler has failed to rebut the factual assertions contained in the affidavits of Wynn Sims indicating that SSC and Equity Holdings have no contacts with South Carolina.  Though "the court may consider the uncontroverted allegations in the plaintiff's complaint," if "a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations" and instead must come forward with her own affidavit or other evidence showing that jurisdiction exists.  Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 835 (D.S.C. 2015); Wolf v. Richmond Cnty. Hosp. Authority, 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, No. 92-1682, 1993 WL 134616, at *2-3 (4th Cir. Apr. 29, 1993) (unpublished).

The only evidence that Fowler has adduced is (1) a Medicare.gov printout showing that SSC and Equity Holdings hold at least a 5% ownership interest in the Facility and (2) a copy of a credit agreement signed by SSC, which purportedly provides funding to the Facility – as well as over two hundred other skilled nursing facilities across the country.  These documents are insufficient to establish that SSC and Equity Holdings have purposefully availed themselves of the privilege of doing business in South Carolina.  First, merely owning a subsidiary "does not confer personal jurisdiction over [a parent company]."  Gray v. Riso Kagaku Corp., No. 95–1741, 1996 WL 181488, at *3 (4th Cir. Apr. 17, 1996) (unpublished); 4A Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1069.4 (4th ed. 2015) ("Because of the presumption of corporate separateness, the parent company is not automatically subject to jurisdiction in that state simply because the subsidiary is carrying on

business in the forum state.")  Second, it is unclear – and Fowler does not explain – how SSC's joint liability as a co-borrower with the Facility under the credit agreement somehow subjects it to personal jurisdiction in South Carolina.  An out-of-state parent company is not subject to personal jurisdiction, for example, because it acts as a guarantor for its in-state subsidiaries, ScanSource, Inc. v. Mitel Networks Corp., No. 6:11–cv–00382–GRA, 2011 WL 2550719, at *6 (D.S.C. June 24, 2011) (unpublished), or provides them with "support services, such as funding or insurance," Toney v. SSC Sumter E. Operating Co., No. 3:19-3226-JFA, 2020 WL 12744577, at *5-6 (D.S.C. Apr. 29, 2020) (unpublished) (considering the same Medicare ownership information and credit agreement with respect to a skilled nursing facility located in Sumter, South Carolina and finding no personal jurisdiction over SSC or Equity Holdings); see also Waste Pro USA, 2019 WL 3344040, at *6.

In short, Fowler's reliance on her complaint's conclusory allegations and the two documents showing a tenuous connection between Defendants and South Carolina is insufficient to establish a prima facie case that SSC and Equity Holdings purposefully availed themselves of the privilege of conducting business within the state.  Having found that the first element of the specific jurisdiction test is not satisfied, the court need not address the last two prongs. Consulting Eng'rs, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.").

It is therefore

**ORDERED** that Defendants' motions to dismiss, docket numbers 62 and 63, are granted.

**IT IS SO ORDERED.**

                                                            s/Henry M. Herlong, Jr.
                                                            Senior United States District Judge

Greenville, South Carolina
January 4, 2023